UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAVEL KOVALENKO,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | Case No.: 1:17-cv-0166 - JLT<br><br>ORDER GRANTING PLANTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF PAVEL KOVALENKO AND AGAINST DEFENDANT NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY |

Pavel Kovalenko asserts he is entitled to supplemental security income under Title XVI of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating the record and seeks judicial review of the decision to deny his application for benefits. (Doc. 21) Because the ALJ erred in rejecting limitations identified by Plaintiff's treating physician, Plaintiff's motion for summary judgment is **GRANTED** and the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**PROCEDURAL HISTORY**

On March 18, 2013, Plaintiff filed his application for benefits, alleging disability beginning November 3, 2004. (Doc. 13-6 at 2) The Social Security Administration denied Plaintiff's applications for benefits at the initial level and upon reconsideration. (*See generally* Doc. 13-4) Plaintiff requested an administrative hearing, at which he testified before an ALJ on May 5, 2015. (Doc. 13-3 at 17, 35)

The ALJ concluded Plaintiff was not disabled and issued an order denying benefits on June 25, 2015. (*Id.* at 17-27) The Appeals Council denied Plaintiff's request for review of the decision on December 5, 2016. (*Id.* at 2-5) Thus, the ALJ's determination became the final decision of the Commissioner of Social Security ("Commissioner").

On February 2, 2017, Plaintiff initiated the action in this Court by filing a complaint. (Doc. 1) The Commissioner lodged the certified administrative record on October 12, 2017. (Doc. 13) The parties then exchanged confidential letter briefs as ordered. (Docs. 15, 18) On February 12, 2018, Plaintiff filed his motion for summary judgment (Doc. 21), to which the Commissioner filed a brief in opposition on April 24, 2018 (Doc. 24).[1]

## **STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole

---

[1] On May 18, 2018, Plaintiff filed a stipulation for an extension of time to file a brief in reply, which the Court construed as a motion for an extension of time. (Docs. 25-26) However, Plaintiff failed to identify *any* reason for the requested extension and failed to support the request with the good cause required by both the Scheduling Order and Rule 16 of the Federal Rules of Civil Procedure. (Doc. 26) As a result, the request was denied without prejudice. (*Id.* at 2)
On May 21, 2018, Plaintiff again requested an extension of time to file a brief in reply. (Doc. 27) Prior to the Court issuing a ruling on the motion, Plaintiff filed a brief in reply. (Doc. 28) In the request for an extension, Jesse Kaplan, Plaintiff's counsel, reports that he has litigated Social Security cases in the Eastern District for approximately thirty years but is "not sure what every magistrate's scheduling order in the Eastern District states." (Doc. 27 at 2) Thus, Mr. Kaplan assumed that Plaintiff had twenty-one days to file a brief in reply. (*Id.*) The Court is unable to find failure to read its Scheduling Order and note the deadlines governing briefing in this action constitutes good cause to support the requested extension. *See Medicinova Inc. v. Genzyme Corp.,* 2017 U.S. Dist. LEXIS 101450 at *2 (S.D. Cal. June 29, 2017) (finding failure to read a scheduling order did not constitute good cause for extending a deadline ordered by the court) (Accordingly, Plaintiff's motion for an extension of time (Doc. 27) is **DENIED** and the brief in reply is **STRICKEN**.

2

must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## **DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounois v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## **ADMINISTRATIVE DETERMINATION**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity ("RFC") to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

**A.  Relevant Medical Opinions**

In July 2013, Plaintiff had x-rays taken of his lumbar spine. (Doc. 13-8 at 30) Dr. Michael Rappaport determined Plaintiff had "[d]egenerative changes with disc space narrowing" at levels L1-2, L4-5, and L5-6; osteophyte formation at the L1-2 through L5-6 levels; and "possible mild left L5-6 and

L6-S1 facet arthropathies." (*Id.*)

Dr. Samuel Rush performed a consultative examination on July 18, 2013. (Doc. 13-8 at 24) Plaintiff informed Dr. Rush that "most of his problems date[d] back to 2004 when he was in a truck driving accident," which caused Plaintiff to suffer herniated discs, "a laceration on his scalp which required skin graft[,] and extensive burns and muscle tear on his left forearm which also required skin grafting." (*Id.*) Plaintiff reported that he continued to have "a lot of back pain when bending, lifting, or walking more than short distances" and was "very depressed." (*Id.*) Dr. Rush found Plaintiff's range of motion was normal in each of his joints, and he had a negative straight leg raising test. (*Id.* at 26-27) According to Dr. Rush, Plaintiff's motor strength was "5/5 in [his] upper and lower extremities bilaterally." (*Id.* at 27) He observed Plaintiff walked "without difficulty," including walking on his toes and heels. (*Id.* at 28) Dr. Rush opined Plaintiff was "oriented to time, place, and person, although he … [had] a moderately depressive affect." (*Id.*) Dr. Rush concluded that "[b]ased upon the history obtained and the findings of []his physical examination," Plaintiff did not have restrictions with pushing, pulling, lifting, carrying, walking, standing, or sitting. (*Id.*) Further, Dr. Rush opined Plaintiff did not have any postural limitations with bending, kneeling, stooping, crawling, or crouching. (*Id.*)

On August 13, 2013, Dr. Charles Lee reviewed the record and completed a physical residual functional capacity assessment regarding Plaintiff's impairments from March 1, 2012 through the date of his opinion. (Doc. 13-4 at 11-12) Dr. Lee opined Plaintiff was able to lift and carry 25 pounds frequently and 50 pounds occasionally, sit about six hours in an eight-hour day, and stand and/or walk about six hours in an eight-hour day. (*Id.* at 11) According to Dr. Lee, Plaintiff had an unlimited ability to climb ramps and stairs; could frequently climb ladders, ropes, and scaffolds; and frequently stoop, kneel, crouch, and craw. (*Id.*) Dr. Lee believed Plaintiff should avoid concentrated to extreme cold, vibrations, and hazards; but had no limitations with extreme heat, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation. (*Id.* at 12)

Dr. Garnica completed a "Medical Source Statement" regarding Plaintiff's physical limitations on September 23, 2013. (Doc. 13-8 at 40-41) Dr. Garnica opined Plaintiff was able to lift and carry less than ten pounds occasionally or frequently because Plaintiff was "very weak" and had "lower back pain" as well as a decreased range of motion. (*Id.* at 40) He noted Plaintiff could not walk "more than

20-30 minutes" in an eight-hour day," noting this conclusion was due to Plaintiff's decreased range of motion and tenderness in his back. (*Id.*) According to Dr. Garnica, Plaintiff "need[ed] to change body positions" every thirty minutes and could sit less than six hours in an eight-hour workday. (*Id.* at 40-41) Dr. Garnica believed Plaintiff could occasionally balance but should never climb, stoop, kneel, crouch, or crawl. (*Id.* at 41) He noted these restrictions were due to Plaintiff suffering from asthma, high blood pressure, and lower back pain. (*Id.*)

Dr. Keith Quint reviewed the record while Plaintiff's application was pending at the reconsideration level and found there was not a "significant functional change," because the additional record did "not show any worsening or changes in [Plaintiff's] condition." (Doc. 13-4 at 23) On November 13, 2013, Dr. Quint affirmed the findings of Dr. Lee, limiting Plaintiff to medium exertion work with postural and environmental limitations. (*Id.*)

In March 2015, Plaintiff had several images taken of his thoracic, cervical, and lumbar spines. (Doc. 13-8 at 50-56) Dr. J. Charles Smith opined Plaintiff had "straightening of the cervical spine curvature," though the alignment remained normal; "moderate disc narrowing at C5-C6[;] and mild narrowing at C6-C7." (*Id.* at 56) In the thoracic spine, Dr. Smith determined Plaintiff had "minimal osteophytic changes." (*Id.*) Finally, in the lumbar spine, Dr. Smith found Plaintiff had "moderate-to-severe disc narrowing at L3-L4 with mild osteophyte formation;" "severe narrowing at L4-L5;" and "mild sclerotic changes of the posterior articular facets, particularly at the L4-L5." (*Id.*)

On March 30, 2015, Dr. Garnica completed a second "Medical Source Statement." (Doc. 13-8 at 74) He opined Plaintiff could lift and carry less than ten pounds occasionally, stand and/or walk less than two hours in an eight-hour day, and sit less than one hour. (*Id.*) He noted these limitations were due to Plaintiff having "severe back pain … [and] neck pain." (*Id.*) Dr. Garnica also indicated his findings were supported by an x-ray and CT scans. (*Id.*) In addition, Dr. Garnica again opined Plaintiff had postural limitations and should never climb, balance, stoop, kneel, crouch, or crawl. (*Id.* at 75) He indicated these limitations were because Plaintiff suffered from asthma, degenerative disc disease, neck pain, back pain, and high blood pressure. (*Id.*) Further, Dr. Garnica opined Plaintiff had environmental limitations with heights, moving machinery, temperature extremes, chemicals, and dust. (*Id.*)

///

**B.     The ALJ's Findings**

Pursuant to the five-step process, the ALJ first determined Plaintiff had not engaged in substantial gainful activity after the application date of March 18, 2013. (Doc. 13-3 at 19) At step two, the ALJ found Plaintiff's severe impairments included degenerative disc disease and asthma. (*Id.*) At step three, the ALJ determined that Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled a Listing. (*Id.* at 20-21) Next, the ALJ determined:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except he can occasionally lift and carry up to 50 pounds and frequently 25, stand and or walk for 6 hours and sit for 6 to 8 hours in an 8-hour workday with normal breaks. The claimant is capable of frequent stooping, kneeling, crouching, crawling and climbing ladders, ropes and scaffolds. He must avoid concentrated exposure to hazards, vibration, fumes, odors, dusts, and cases, and extreme cold.

(*Id.* at 21) With these limitations, the ALJ found at step four that Plaintiff was "capable of performing past relevant work as a truck driver." (*Id.* at 25) In the alternative, the ALJ found at step five that Plaintiff could perform "other jobs that exist in significant numbers in the national economy," such as hand packer, store laborer, and cleaner. (*Id.* at 26) Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 27)

## DISCUSSION AND ANALYSIS

Plaintiff contends the ALJ erred in reviewing the medical record, including the opinions offered by his treating physician. (Doc. 21 at 4-6) On the other hand, the Commissioner contends the decision is "free of reversible legal error," and argues that "the ALJ properly evaluated the medical opinions in assessing Plaintiff's residual functional capacity." (Doc. 24 at 12, 30) (emphasis omitted)

**A.     ALJ's Evaluation of the Medical Evidence**

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Generally, the opinion of a treating physician is afforded the greatest weight but it is not binding on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.

1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Thus, the courts apply a hierarchy to the opinions offered by physicians.

A treating physician's opinion is not binding upon the ALJ, and may be discounted whether or not another physician contradicts the opinion. *Magallanes*, 881 F.2d at 751. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only by identifying "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*, 81 F.3d at 830.

When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld when there is "more than one rational interpretation of the evidence." *Id.; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ"). Here, Plaintiff contends the ALJ erred in rejecting physical limitations identified by Dr. Garnica, his treating physician. Because Drs. Rush, Lee, and Quint offered opinions that conflicted with limitations identified by Dr. Garnica, the ALJ was required to set forth specific and legitimate reasons to support her rejection of Dr. Tiu's opinions. *See Lester*, 81 F.3d at 830.

The ALJ summarized the conclusions of Dr. Garnica and the weight given to the opinions as follows:

> On September 23, 2013, treating physician, William Garnica, M.D., completed a Medical Source Statement and opined the claimant could lift and carry less than 10 pounds, stand and walk less than 2 hours, and sit less than 6 hours in an 8-hour workday. He further opined the claimant should be able to alternate standing and sitting. Dr. Garnica also assessed the claimant should never perform postural activity except for balancing which was limited to occasional. Lastly, he opined the claimant had environmental restrictions such as avoiding heights, moving machinery, temperature extremes, chemicals, and dusts (Exhibit 4F, pp. 1-2). I give Dr. Garnica's opinion limited weight because it is inconsistent with his examinations and is not supported by objective medical findings or treating progress notes of record (Exhibits 1F; 6F-7F). Furthermore, his opinion appears to be based on the claimant's subjective complaints and not objective medical findings. Accordingly, I do not accept Dr. Garnica's assessment with regard to the claimant's residual functional capacity.

(Doc. 13-3 at 23-24) Plaintiff contends the ALJ erred in evaluating the opinions of Dr. Garnica,

7

arguing the ALJ failed to identify legally sufficient reasons to reject the opinion from 2013 and did not address the opinion from 2015. (Doc. 21 at 4-7)

1. Dr. Garnica's Medical Source Statement from 2013

The Ninth Circuit determined an ALJ may reject a medical opinion when an ALJ finds inconsistencies between a treating doctor's assessment and his own medical records. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). In addition, an ALJ may reject limitations "unsupported by the record as a whole." *Mendoza v. Astrue*, 371 Fed. Appx. 829, 831-32 (9th Cir. 2010) (citing *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003)). However, when an ALJ believes the treating physician's opinion is unsupported by the objective medical evidence, the ALJ has a burden to "set[] out a detailed and thorough summary of the facts *and conflicting clinical evidence*, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986) (emphasis added); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.") For example, an ALJ may also discount the opinion of a treating physician by identifying an examining physician's findings to the contrary and identifying the evidence that supports that finding. *See, e.g., Creech v. Colvin*, 612 F. App'x 480, 481 (9th Cir. 2015).

The ALJ f did not identify specific findings from the treatment notes that conflict with the limitations identified by Dr. Garnica. Rather, the ALJ cited broadly to Exhibits 1F, 6F, and 7F, which total more than forty pages of medical records, including both treatment notes and imaging reports. (*See* Doc. 13-8 at 5-21, 45-75) In doing so, the ALJ fails to identify specific conflicts in the record and to resolve the conflict. *See Allen*, 749 F.2d at 579; *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). Consequently, the ALJ offers only his conclusion the limitations identified by Dr. Garnica conflicted with the record, including the treatment notes.[2] As the Ninth Circuit explained, "To say that medical

---

[2] Defendant identifies evidence in the ALJ's summary of the medical record that the Commissioner asserts conflicts with the limitations identified by Dr. Garnica. (Doc. 24 at 14-15). However, the ALJ fails to address this evidence in explaining the weight given to the opinion. (*See* Doc. 13-3 at 23-24) The Court may not accept post hoc explanations, and cannot affirm on grounds not invoked by the ALJ. *See Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003); *see also Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (explaining that the court could not consider the inconsistencies identified by the government and not the ALJ because the court is "constrained to review the reasons the ALJ asserts"). Consequently, the Court is unable to consider the inconsistences identified by the Commissioner.

8

opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

In addition, though the ALJ indicated his belief that Dr. Garnica's opinion was "based on the claimant's subjective complaints and not objective medical findings" (Doc. 13-8 at 24) Dr. Garnica indicated the limitations identified were due because Plaintiff was "very weak," and he had a decreased range of motion and tenderness in his back. (Doc. 13-8 at 40) This Court has consistently recognized that a physician's findings regarding a claimant's tenderness and range of motion are objective findings. *See, e.g.*, *Lemus v. Astrue*, 2016 WL 7034739 at *7 (E.D. Cal. Nov. 30, 2016) (noting the claimant's "decreased range of motion" was an "objective finding[]…in the record"); *Nelson v. Colvin*, 2016 WL 3407627 at *14 (E.D. Cal. June 20, 2016) (observing the treating physician's "clinical findings included tenderness, range of motion, and diminished strength"); *McSparren v. Colvin*, 2013 WL 5303062 at *4 (E.D. Cal. Sept. 19, 2013) ("testing revealed abnormal objective findings, including, inter alia, reduced range of motion of the lumbar and cervical spine and reduced sensation and strength in the back"). Thus, Dr. Garnica's determinations that Plaintiff had reduced strength, decreased range of motion, and tenderness were objective findings supporting the limitations he identified. Moreover, there is no indication that Dr. Garnica relied solely upon Plaintiff's subjective complaints in preparing the Medical Source Statement.

2.  Dr. Garnica's Medical Source Statement from 2015

The ALJ failed to address the Medical Source Statement completed by Dr. Garnica on March 30, 2015. The Commissioner argues this is harmless "because Dr. Garnica's 2015 opinion was practically identical to the doctor's 2013 opinion." (Doc. 24 at 15) However, as set forth above, the ALJ failed to set forth a specific and legitimate reason for rejecting the limitations identified by Dr. Garnica in 2013.

Furthermore, the Medical Source Statement from 2015 refers to additional objective findings to support the limitations identified, including Plaintiff's x-ray of his lumbar spine and the CT scans completed in March 2015. (*See* Doc. 13-8 at 74) These images included findings that Plaintiff had "straightening of the cervical spine curvature," "moderate-to-severe disc narrowing at L3-L4 with mild

osteophyte formation," and "severe narrowing at L4-L5." (Doc. 13-9 at 50-56) Thus, the conclusion that Dr. Garnica's opinions were "not based on … objective medical findings" is unsupported by the record.

**B.     Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The ALJ failed to identify legally sufficient reasons for rejecting the physical limitations assessed by Plaintiff's treating physician, Dr. Garnica in both 2013 and 2015. Because the ALJ failed to resolve the conflicts in the record regarding Plaintiff's limitations and failed to address the Medical Source Statement from 2015, the matter should be remanded for the ALJ to re-evaluate the medical evidence. *See Moisa*, 367 F.3d at 886.

**CONCLUSION AND ORDER**

Based upon the foregoing, the Court finds the ALJ erred in evaluating the medical evidence, including both opinions offered by Plaintiff's treating physician, and the administrative decision should not be upheld by the Court. *See Sanchez*, 812 F.2d at 510. Because remand is appropriate on these grounds, the Court makes no findings the other issues identified in Plaintiff's opening brief.

Accordingly, the Court **ORDERS**:

1.     Plaintiff's motion for summary judgment (Doc. 21) is **GRANTED**;

2. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

3. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Pavel Kovalenko and against Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **May 31, 2018**  **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE